LETITIA CONWAY, Appellant v. J. NICHOLS, ATLANTIC NATIONAL BANK, JAMES E. WOODALL, and H. A. BRIGGS.

**Homesteads:** ABANDONMENT. A homestead will be deemed abandoned where the owner removed therefrom with the intention of selling it, as he expected to do, although he intended to return to it if he could not make a sale.

**Evidence:** QUIETING TITLE. The burden is upon plaintiff in a suit to quiet title to land against the apparent lien of a judgment against his grantor, which the latter at one time occupied as a homestead to overcome the presumption of the latter's abandonment of the homestead arising from his removal therefrom before the sale and his making a new home and voting at a new place.

*Appeal from Cass District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, OCTOBER 14, 1898.

SUIT in equity to quiet plaintiff's title to certain lands in Cass county against the apparent liens of four judgments rendered in favor of defendants and against one Davis, through whom plaintiff obtained title. It is claimed that at the time Davis conveyed the land it was his homestead, and not subject to the lien of the judgments. Defendants pleaded in defense that Davis abandoned the homestead before he sold the land, and that the lien of their judgments attached prior to the conveyance. The trial court dismissed the plaintiff's petition as to all defendants except Briggs, and plaintiff and defendant Briggs appeal. As Briggs has filed no argument, his appeal will not be considered.—*Affirmed.*

*Delano & Meredith* for appellant.

*Curtis & Follett, H. M. Boorman,* and *G. M. Lyon* for appellees.

DEEMER, C. J.—The real estate in question was used and occupied by Davis as a homestead until March 1, 1891. On this last-named date he leased the premises for the period of one year, and moved into the city of Atlantic. Appellees' judgments were obtained in the years 1889 and 1890. In October of the year 1891 Davis entered into a contract for the sale of the land to one Conrad, which was consummated in March of the year 1892. Thereafter Conrad sold the land to appellant, and she brought this suit to quiet her title thereto. It is conceded that the land was originally the homestead of Davis, and the only question in the case is whether or not he abandoned it before the sale to Conrad. The evidence shows that he rented the farm because his son was sick, and unable to look after the place upon which he (the son) was then living; and that after Davis' removal to Atlantic he assisted this son in the management and care of his (the son's) farm. He left a wagon upon the leased premises and did not sell it, or his farming implements and stock, until after the sale to Conrad. He saved grain grown upon his son's land with which to seed his own land the following spring, and did not dispose of it until after he made the contract for the sale of his farm; and he also arranged for timothy seed to sow upon his land in the spring of 1892. His contract with Conrad was made October 20, 1891, and Conrad at that time turned over a team of mules, a wagon, and harness to apply upon the purchase price. Davis registered as a voter in the city of Atlantic on the thirty-first day of October, 1891, and voted in said city at the following November election; and also voted in the same place at the next spring election. Shortly after renting his farm, he moved all his stock to the farm occupied by his son. As Davis removed from the

homestead in March, 1891, and thereafter made his home in Atlantic, and voted in that place at the November election, :the presumption arises that he intended to abandon his home-:stead, and the burden is on plaintiff to show that, notwithstanding this apparent abandonment, he (Davis) left his farm temporarily, and with the definite and settled purpose of returning thereto and continuing it as his home. *Newman v. Franklin,* 69 Iowa, 244; *Maguire v. Hanson,* 105 Iowa, 215. Davis says: "I wanted to sell the place, and if I did not sell it, then I intended to go back there. * * * My intention all the time was to go back if I did not sell. I expected to sell it, but would go back if I did not sell it." "At the time of the sale to Conrad my family was living in town, and this was my home. I regarded this as my residence and home then. * * * When I registered in October, 1891, I intended to go back on the place if I did not sell it, but I did not then claim my home on the farm, as I was out of my township then." The evidence further shows that Davis began his efforts to dispose of the farm within a few weeks after he moved to Atlantic, and finally made the contract with Conrad. It seems to us that these facts bring the case within the rule announced in *Kimball v. Wilson,* 59 Iowa, 638, wherein it is held that a removal from the homestead with the intention to return if the owner could not make a living at some other business, which contingency he intended to avoid, constitutes an abandonment. In that case the debtor said he intended to go back to the farm if he "could not make a living here" in the practice of his profession as a lawyer. In this case Davis says: "My intention was to go back if I did not sell. I expected to sell, but would go back if I did not sell." In each case there was an intention to abandon, qualified by a contingency. And the contingency was one which the debtor intended to avoid. See, also, *Cotton v. Hamil,* 58 Iowa, 594; *Maguire v. Hanson, supra.* We think Davis' removal constituted an abandonment of the homestead, and that the lien of appellant's judgments attached before the sale to Conrad.—AFFIRMED.