In re John E. KEANE fdba Jack Keane Insurance Agent; fdba Golden & Keane Insurance Agency, a partnership, and Suzanne M. Keane, Debtors.

John E. KEANE and Suzanne M. Keane, Plaintiffs,

v.

UNITED GUARANTY INDEMNITY COMPANY, 1327 Beaman Place, P.O. Box 21367, Greensboro, North Carolina, 27420, Defendant.

Bankruptcy No. 79–01069.
Adv. No. 80–0093.

United States Bankruptcy Court,
N. D. Iowa, E. D.

Dec. 23, 1980.

Daniel P. Ernst, Dubuque, Iowa, for plaintiffs.

James A. Trannel, Dubuque, Iowa, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, and ORDERS, WITH MEMORANDUM

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court involves a Complaint to Avoid the Fixing of a Lien under Section 522(f)(1) of the Bankruptcy Reform Act of 1978. Attorney Daniel P. Ernst represented the Plaintiffs in this adversary proceeding, and Attorney James A. Trannel represented the Defendant. Briefs have been submitted by both Attorneys. The Court, having examined the record and being fully advised, now makes the following Findings of Fact, Conclusions of Law, and Orders:

## FINDINGS OF FACT

1. On or about March 21, 1974, John E. Keane and Suzanne M. Keane executed a promissory note in favor of the Insurance Plan Savings & Loan Association, a/k/a Capitol Savings & Loan Association, Mt. Pleasant, Iowa, in the amount of $6,249.60, including principal and interest payable in sixty equal installments of $104.16 on the first day of each month, commencing with the month of May, 1974. The Debtors borrowed the principal sum of $5,000.00 to finance certain home improvements.

2. Subsequent to its execution, said promissory note was assigned and transferred by the Insurance Plan Savings & Loan Association, a/k/a Capitol Savings & Loan Association, to United Guaranty Indemnity Company, the Defendant in the present adversary proceeding. As assignee of the promissory note, United Guaranty Indemnity Company became the legal holder of said note and was entitled to receive payment according to the terms of said note.

3. After making payments in the sum of $3,426.79, Plaintiffs defaulted in said monthly payments to Defendant in 1978, the last payout having been made on April 10, 1978.

4. On October 13, 1978, United Guaranty Indemnity Company filed suit against John E. Keane and Suzanne M. Keane upon said promissory note. Six monthly payments of $104.16 were past due and owing in the amount of $624.96. The amount of indebtedness remaining under the promissory note totalled $2,822.81.

5. On November 14, 1978, Plaintiffs confessed judgment in favor of United Guaranty Indemnity Company for the sum of $2,822.81 with interest thereon at the rate of 7 percent per annum from the date of the Confession of Judgment. Said Judgment was entered by the Clerk of the District Court in the court record, as provided by Chapter 676, Code of Iowa, 1980, on November 27, 1978.

6. On October 11, 1979, John E. Keane and Suzanne M. Keane filed a voluntary petition for relief in bankruptcy under Chapter 7 of Title 11 of the United States Code.

7. The following real estate was claimed and allowed by the Trustee as an exempt homestead under Chapter 561.16, Code of Iowa, 1980, and 11 U.S.C. Section 522(b)(2)(A):

Lot 22 in "HILLSIDE CENTER ADDITION" in the City of Dyersville, Iowa, according to the plat thereof in Book of Plats No. 25, page 322, records of Dubuque County, Iowa.

8. On January 25, 1980, the Debtors were discharged.

9. On February 1, 1980, John E. Keane and Suzanne M. Keane consummated a private sale of said real estate. The proceeds of said sale were applied to the payment of all expenses with a distribution of the remaining $800.00 to the Debtors.

10. On April 25, 1980, Debtors filed a Complaint to Avoid the Fixing of a Lien upon the above described real estate and homestead of the Debtors under 11 U.S.C. Section 522(f), alleging that the judgment lien claimed by Defendant impairs an exemption to which the Debtors are entitled under 11 U.S.C. Section 522(b).

11. Defendant, United Guaranty Indemnity Company, claims that the entry of the Judgment against John E. Keane and Suzanne M. Keane in the sum of $2,822.81 on November 27, 1978, created a judgment lien on Plaintiffs' real estate, pursuant to Chapter 624.23, Code of Iowa, 1980, including the above described homestead. Defendant alleges that Chapter 561.21(3) allows a homestead to be sold to satisfy debts incurred for work done or material furnished exclusively for the improvement of said homestead.

12. Defendant further contends that its judgment lien constituted a vested property right pursuant to Iowa law. Since its judgment lien was obtained prior to the effective date of the Bankruptcy Reform Act of 1978, i. e., October 1, 1979, Defendant claims that the Debtors' power to avoid Defendant's judicial lien by the retroactive application of Section 522(f)(1) of the Act would constitute a taking of Defendant's vested property rights acquired thereby, effecting a deprivation of property without due process of law in violation of the Fifth Amendment to the United States Constitution.

## CONCLUSIONS OF LAW

1. The Confession of Judgment obtained by United Guaranty Indemnity Company against John E. Keane and Suzanne M. Keane in the sum of $2,822.81 on November 27, 1978, did not create a judgment lien pursuant to Chapter 624.23, Code of Iowa, 1980, on Debtors' homestead, said real estate described as:

Lot 22 in "HILLSIDE CENTER ADDITION" in the City of Dyersville, Iowa, according to the plat thereof in Book of Plats No. 25, page 322, records of Dubuque County, Iowa.

2. The debt due and owing Defendant under said promissory note does not constitute a debt incurred for work done or material furnished exclusively for the improvement of said homestead which, pursuant to Chapter 561.21(3), may be satisfied by judicial sale of the homestead. Therefore, the amount owed to Defendant from Plaintiffs under said promissory note is included in the effect of the Debtors' discharge granted in this bankruptcy.

3. Plaintiffs' Complaint to Avoid the Fixing of a Lien under 11 U.S.C. Section 522(f)(1) is dismissed as Defendant's Judgment did not create a judicial lien upon the above described real estate and homestead of the Debtors. Defendant did not obtain a lien upon an interest of the Plaintiffs in property that impairs an exemption to which the Debtors are entitled under 11 U.S.C. Section 522(b).

## MEMORANDUM

### DIVISION I

Pursuant to Section 522(f)(1) of the Bankruptcy Reform Act of 1978, Plaintiffs seek to avoid the fixing of a judicial lien on the real estate that was claimed and allowed as an exempt homestead under Chapter 561.16, Code of Iowa, 1980, and 11 U.S.C. Section 522(b)(2). Defendant claims

that the entry of judgment against Plaintiffs on November 27, 1978, created a judgment lien on said real estate of Plaintiffs pursuant to Chapter 624.23, Code of Iowa, 1980, and that to avoid Defendant's judgment lien[1] obtained prior to the effective date of the Act, October 1, 1979, as prayed by Plaintiffs pursuant to 11 U.S.C. Section 522(f)(1), would be violative of Defendant's constitutional protections.[2]

For the reasons stated in Division II and Division III below, a determination of the respective rights of Defendant and Plaintiffs in the homestead property under Iowa law is dispositive of Plaintiffs' request for avoidance of the lien herein. Since no grounds exist under Iowa law upon which a lien may fix on a property interest of the Plaintiffs such that an exemption to which the Debtors are entitled may be impaired, the Court finds no basis upon which the Plaintiffs' Complaint to Avoid the Fixing of a Lien pursuant to Section 522(f) may be granted. Therefore, the constitutionality of the retrospective application of Section 522(f)(1) to avoid judicial liens obtained prior to the effective date of the Act is an issue that need not be addressed in this case.

### DIVISION II

The primary goal of Congress in enacting the Bankruptcy Reform Act of 1978 was to provide debtors with a "fresh start, free from creditor harassment and free from the worries and pressures of too much debt." H.R. 95–595, 95th Cong., 1st Sess. 125 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6086. Section 522, the exemption provision, assures the availability of a "fresh start" under the Act by providing

for the debtor's retention of adequate possessions, thereby keeping the debtor off public welfare and enabling him to return to a normal life. The rehabilitative goal of Section 522, i. e., allowing debtors to retain sufficient property to make a meaningful fresh start, is furthered by subsection (f). Section 522(f) assures the protection of the debtor's exemptions and thus his "fresh start" against the legal actions of his creditors by permitting the debtor to avoid certain liens on his exempt property.

522(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) houshold furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f). Section 101(27) defines the judicial liens to which the debtor's avoidance powers apply under § 522(f)(1):

101(27) "judicial lien" means lien obtained by judgment, levy, sequestra-

---

1. A lien obtained by judgment is included within the meaning of "judicial lien" for purposes of the Bankruptcy Reform Act. 11 U.S.C. § 101(27). See, Division II, *infra.*

2. Specifically, the judgment against Plaintiffs was obtained by the Defendant during the gap period between the date of the enactment of the Act, November 6, 1978, and the effective date of the Act, October 1, 1979. Defendant claims that the entry of said judgment, pursuant to Iowa law, created a judgment lien upon

Plaintiffs' homestead and a vested property right therein. Defendant raises the issue of the constitutionality of Section 522(f)(1) as it applies to such liens which vested prior to the effective date of the Act, contending that the avoidance provision of said section constitutes a taking of vested property rights without just compensation in violation of the Fifth Amendment to the United States Constitution inasmuch as it affects a deprivation of property without due process of law.

tion, or other legal or equitable process or proceedings;

11 U.S.C. § 101(27).

■ Although Section 522(f)(1) permits the Debtor to avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, H.R.No. 95–595, 95th Cong., 1st Sess. 362 (1977); S.R.No. 95–989, 95th Cong., 2d Sess. 76, U.S.Code Cong. & Admin.News 1978, p. 5787 (1978), Defendant has not obtained a judicial lien by judgment, levy or other legal or equitable process or proceeding under Iowa law that may fix on Plaintiffs' homestead property and impair Debtors' exemption thereby. The following two Chapters of the Code of Iowa are applicable:

*561.16 Exemption—divorced spouse.*

The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary . . . [3]

*624.23 Liens of judgments.*

Judgments in the appellate or district courts of this state, or in the circuit or district court of the United States within the state, are liens upon the real estate owned by the defendant at the time of such rendition, and also upon all he may subsequently acquire, for the period of ten years from the date of the judgment.

Iowa Code §§ 561.16, 624.23 (1980).

Chapter 624.23 provides that judgments obtained in Iowa courts are liens upon the real estate owned by the defendant on the date of such rendition or upon real estate subsequently acquired by the defendant within a ten-year period thereof. Chapter 561.16 provides that, absent special declaration of statute to the contrary, the homestead of every family is exempt from judicial sale. However, the law in relation to the homestead exemption is silent as to the effect of a judgment lien. The Supreme Court of Iowa construed these two sections, which were enacted simultaneously by the Iowa legislature, and determined that a judgment lien may not attach upon homestead property declared exempt from judicial sale. *Lamb v. Shays*, 14 Iowa 567 (1863).

(The judgment lien section and the homestead exemption section) were passed by the Legislature at the same time, the one giving the judgment creditor a lien on all lands of the defendant and the other denying him the right to enforce it so far as the homestead is concerned. The right of the judgment creditor to seize or to enforce his judgment by selling the lands of the debtor exists only by force of the statute and is regulated altogether by its provisions. The lien of a judgment upon lands in this State being conferred by statute, it can only attach or become effective in the manner, at the time, and upon the conditions and limitations imposed by the statute itself. A lien without the power to enforce it carries with it no advantage to the owner thereof. It cannot be enforced as against the homestead, because it is exempt from judicial sale. It is inoperative, and cannot be otherwise, as long as the homestead is used as a home. Construing the two sections together, having been passed at the same time by the Legislature, we think that it could not have been designed that the lien should ever attach upon property that was declared exempt from judicial sale.

14 Iowa at 569–570. Therefore, although the Iowa Code provisions do not expressly limit the operation of the judgment lien to property interests of the judgment debtor which may be levied upon and sold under execution at a judicial sale, it is clear that the case law construction of the above provisions does provide such limitations. See also, *American Sav. Bank of Marengo v. Willenbrock*, 209 Iowa 250, 228 N.W. 295 (1929) (recovery of judgment on note does not give creditor a judgment lien upon homestead of debtor, and newly-acquired homestead property, to the extent of the value of the old homestead, was held exempt from judicial sale, citing *Lamb v.*

---

**3.** See, Division III, *infra*, for statutory exceptions to Iowa Code § 561.16 (1980).

*Shays*); *Beatty v. Cook*, 192 Iowa 542, 185 N.W. 360 (1921) (homestead of pensioner held not subject to judgment liens of creditors as the statute intends that liens shall be created and shall attach only upon non-exempt real estate of the debtor); *Mitchell v. West*, 93 N.W. 380 (Iowa 1903); *Ayres v. Griel*, 85 Iowa 720, 51 N.W. 14 (1892); *Briggs v. Briggs*, 45 Iowa 318 (1876); *Hale v. Heaslip* 16 Iowa 451 (1864); *Cummings v. Long*, 16 Iowa 41 (1864).

The construction of the Iowa Code provisions governing judgment liens and homestead exemptions embodies the rule of a majority of similar statutes of other states which either expressly or impliedly limit the operation of liens to property subject to levy and sale under execution, and is in harmony with the spirit of the homestead and exemption laws. 2 *Freeman, Law of Judgments*, § 936 (5th ed. 1925).

In view of Defendant's assertions that the note executed by Plaintiffs was obtained for the purpose of financing certain home improvements, a § 561.21 statutory exception to the § 561.16 homestead exemption from judicial sale provision, see Division III, *infra*, the Court may proceed on the assumption that Plaintiffs possessed Chapter 561 homestead rights in 1974. Therefore, the judgment rendered against Plaintiffs in 1978 was founded upon a debt incurred after the acquisition of Plaintiffs' homestead rights. The record is void of any evidence showing that, when the judgment was rendered and when the debt upon which it was founded was contracted, the property was not the homestead of John and Suzanne Keane. Thus, pursuant to Chapters 561.16 and 624.23, Defendant's judgment created no lien upon Plaintiffs' homestead.

Further, the private sale of said real estate on February 1, 1980, by Plaintiffs did not furnish an opportunity for Defendant's judgment lien to attach to said property. If, at the moment of conveyance, the homestead character of the property ceased, leaving the property in the hands of the purchaser liable to be sold under the judgment against the debtors, the rights conferred by the homestead exemption would be effectively unavailing.

The right of exemption continues until the sale and delivery of the deed to the vendee, and the lien cannot attach until after sale and delivery, nor until after it ceases to be occupied by the owner. Prior to this the vendee's rights become absolute.

The giving to the owner the full power to devise the homestead as he may think proper, without regard to the rights of judgment lien holders, is an additional evidence of the design of the Legislature to place the homestead wholly within the power of the owner and beyond the grasp of the creditor.

*Lamb v. Shays*, 14 Iowa at 570–571.

In *Cummings v. Long*, 16 Iowa 41 (1864), lots constituting the homestead of the debtor from the time of his purchase in May, 1855, were held not liable for the payment of the creditor's judgment rendered upon a debt contracted three months after said purchase in September, 1855. Since the debtor continued to occupy and use said premises as his homestead at the time creditor obtained his judgment and also at the time debtor sold said property to vendee in 1857, the sale thereof did not make the property liable for creditor's judgment. Citing *Lamb v. Shays*, the Supreme Court of Iowa held that the lien of said judgment did not attach upon the sale and surrender of the homestead and its possession.

■ Homestead property which has never been abandoned can be transferred by the owner free from the effects of a judgment lien obtained upon a debt contracted after debtor's occupation and acquisition of homestead rights. The vendee of the homestead holds the premises clear of a judgment rendered against the vendor in such cases. See, 2 *Freeman, Law of Judgments*, § 945 (5th ed. 1925); *Mitchell v. West*, 93 N.W. 380 (Iowa 1903); *Ayres v. Griel*, 85 Iowa 720, 51 N.W. 14 (1892).

Plaintiffs' homestead retained its exempt character as evidenced by the Trustee's allowance of the exemption in bankruptcy on November 30, 1979. Therefore, the exempt

property remained clear of Defendant's judgment lien; the homestead could be conveyed without furnishing an opportunity for the lien to attach. The conveyance on February 1, 1980, carried good title to the vendee, free from Defendant's judgment lien against Plaintiffs' real estate.

The net proceeds from the sale of the homestead received by Plaintiffs, i. e., the sale price less amounts paid to satisfy liens and necessary expenses of the sale, are exempt to Plaintiffs. Section 522(c) of the Act provides:

> § 522. *Exemptions.*
>
> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case ...

11 U.S.C. § 522(c). John and Suzanne Keane are entitled to retain the $800 proceeds received from the February 1, 1980, sale of their exempt homestead that succeeded the Keanes' filing in bankruptcy on October 11, 1979.

### DIVISION III

As noted in Division II, Chapter 561.16 provides that, absent special declaration of statute to the contrary, the homestead of every family is exempt from judicial sale. Chapter 561.21 lists specific statutory exceptions to the general rule expressed in Chapter 561.16. The homestead may be sold to satisfy judgments founded on certain classes of debt:

> 561.21 *Debts for which homestead liable.*
>
> The homestead may be sold to satisfy debts of each of the following classes:

1. Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution.

2. Those created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.

3. Those incurred for work done or material furnished exclusively for the improvement of the homestead.

4. If there is no survivor or issue, for the payment of any debts to which it might at that time be subjected if it had never been held as a homestead.

Iowa Code § 561.21 (1980).[4]

Defendant claims that the debt represented by Plaintiffs' 1974 promissory note falls within the class of debts described in subparagraph (3) of Chapter 561.21 for which a homestead may be subjected to judicial sale, i. e., "those incurred for work done or material furnished exclusively for the improvement of the homestead." A strict reading of the statute does not support Defendant's position; subparagraph 3 of Chapter 561.21 is inapplicable to the facts of this case. Defendant, United Guaranty Indemnity Company, was the assignee of a promissory note executed by Plaintiffs in favor of Insurance Plan Savings and Loan Association. United Guaranty Indemnity Company did not perform any "work" or furnish any "material" exclusively for the improvement of Plaintiff's homestead. A literal construction of the specific statu-

---

4. Beyond the express statutory provision that the homestead may be sold to satisfy certain debts specified in Chapter 561.21, case law indicates that the homestead property itself is therefore subject to Chapter 624.23 judgment liens arising from court judgments based upon such debts. In Chapter 561.21(1) cases, for example, where the judgment is founded upon a debt antedating the judgment debtor's actual occupation and acquisition of the homestead right, the Iowa Supreme Court has held that the property is not exempt from judicial sale to satisfy said debt, pursuant to Chapter 561.-21(1), and is therefore subject to the judgment lien thereof. *Christensen v. Esbeck*, 167 Iowa 130, 149 N.W. 76 (1914); *Phelps v. Finn*, 45 Iowa 447 (1877); *Hale v. Heaslip*, 16 Iowa 451 (1864). Further, where the judgment is founded upon debt contracted prior to the acquisition of the homestead, the lien on the homestead property is of a general nature, and the homestead may be sold on execution only for a deficiency remaining after exhausting all other property of the debtor liable to execution. See, Iowa Code § 561.21(1); *Anderson v. Renshaw*, 229 Iowa 93, 294 N.W. 274 (1940); *James v. Weisman*, 161 Iowa 488, 143 N.W. 428 (1913).

tory exceptions to the homestead exemption, outlined in Chapter 561.21, is warranted because homestead statutes are to be construed liberally in favor of the homeowner. *Hunt, Hill & Betts v. Moore*, 219 Iowa 451, 258 N.W. 114 (1935).

It is noteworthy that the present language of Chapter 561.21(3) closely follows the language of Chapter 572.21 which describes the class of persons entitled to a mechanic's lien:

572.2 *Persons entitled to lien.*

Every person who shall furnish any material or labor for, or perform any labor upon, any building or land for improvement, alteration, or repair thereof ... shall have a lien upon such building or improvement ... to secure payment for material or labor furnished or labor performed.

Chapter 572.2, Code of Iowa, 1980. That money is not included within the ordinary meaning of "materials" under Chapter 572.-1(4) and that "furnishing" ordinarily refers to the delivery or supply of said materials for use in the making of the improvement, *A. E. Shorthill Co. v. Aetna Indemnity Co. of Hartford, Conn.*, 124 N.W. 613 (Iowa 1910), provides additional support for the construction of the Chapter 561.21(3) language as applicable only to those creditors whose claims are in the nature of a mechanic's lien rather than money-lenders or their assignees.

Statutes relating to the judicial sale of the homestead must be interpreted in light of the purpose and intent of the legislature in enacting the provisions. *Prudential Ins. Co. of America v. Westfall*, 219 Iowa 1119, 260 N.W. 344 (1935). The purpose of subparagraph (3) of Chapter 561.21 is reflected by its historical derivation. Section 1248, Code of Iowa, 1851, provided that the homestead, though generally exempt from judicial sale, would be available to specific creditors:

Section 1248. But the homestead is liable for taxes accruing exclusively thereon, and ... may be sold to pay the same. It is also subject to mechanics' liens in the cases provided by law.

Iowa Code § 1248 (1851).

The successor of Section 1248, Section 2975, Code of Iowa, 1897, from which present Section 561.21(3) is derived by codification in 1923, read as follows:

Section 2975. The homestead is subject to mechanics' liens for work, labor or material done or furnished exclusively for the improvement of the same.

Iowa Code § 2975 (1897).[5]

The 1923 revision of the 1897 Code language by the Fortieth General Assembly omitted the specific reference to "mechanics' liens for work, labor or materials done or furnished exclusively for the improvement of the (homestead)" and substituted the language of the present section 561.-21(3) "debts ... incurred for work done or material furnished exclusively for the improvement of the homestead." The purpose and intent of the legislature was not to enlarge the class of claimants to include money-lenders and their assignees.

Section 6417 of the Compiled Code of Iowa, 1919, prepared and printed by the Code Commission in 1919, demonstrates that the language of Section 2975, Code of Iowa, 1897, was the existing law at that time. In addition to the Commission's duties to prepare a Compiled Code of existing laws, the Commission was to prepare a report of necessary and desirable changes in

---

**5.** It is clear that had Defendant perfected a Chapter 572 mechanic's lien for work, labor or materials furnished for the improvement of Plaintiffs' homestead, said homestead would be subject to the mechanic's lien and could be sold to satisfy the debt under Chapter 561.21(3). *Aalfs Wall Paper & Paint Co. v. Bowker*, 179 Iowa 726, 162 N.W. 33 (1917). Further, the avoidance provision of 11 U.S.C. § 522(f)(1) applies only to "judicial liens" defined under Section 101(27). Statutory liens, including mechanics' liens, are mutually exclusive of judicial liens, 11 U.S.C. § 101(38); therefore, Plaintiffs would be unable to avoid the fixing of a mechanic's lien under Section 522(f)(1).

See also Section 546(b) which permits mechanics and materialmen to perfect their liens by compliance with state statutory formalities, subsequent to bankruptcy, if within the time permitted by the applicable lien statute. 11 U.S.C. 546(b).

the laws to be proposed to the General Assembly. Consequently, the 1919 Report of the Code Commission included Code Commissioners' Bill No. 79 drafted for the purpose of amending, revising, and codifying Section 6417 of the Compiled Code of Iowa. Section 19 of Bill No. 79 read as the present Chapter 561.21 of the 1980 Code of Iowa. Following the new language of Section 19 of Bill No. 79, the Code Commission indicated that the change in language from that employed in the corresponding section of the Compiled Code, § 6417, from which the subject matter of Section 19 was obtained, was a mere codification, without change in subject matter, of the former provision. See, *Report of Code Commission* at 2, 918 (1919).

■ The legislative history demonstrates that the omission of "mechanics' liens" from Section 19 of Code Commissioners' Bill No. 79, which was subsequently enacted by the Fortieth General Assembly in 1923, Acts 1923 (40 G.A.) ch. 237, § 19, was not intended to enlarge the class of 561.21(3) claimants with "debt incurred for work done or material furnished exclusively for the improvement of the homestead" to include money-lenders and their assignees. In light of the preceding legislative history, Defendant is not entitled to the protection of 561.-21(3) which allows the satisfaction of certain debts by judicial sale of the homestead.

The holding of *Moffitt v. Denniston & Partridge Co.*, 229 Iowa 570, 294 N.W. 731 (1940) is consistent with the preceding construction. In *Moffitt*, the creditor obtained a money judgment on a promissory note for the price of materials furnished and used exclusively for the improvement and construction of the debtor's homestead, and then caused the Clerk of Court to issue to the Sheriff a writ of execution against the property. The debtors demanded the release of said real estate from the levy of execution on the ground that the property was exempt as their homestead, and that, under the 1939 forerunner of Section 561.-21(3), a claim for materials furnished for the exclusive improvement of a homestead could be enforced only if the creditor had a mechanic's lien. The Supreme Court of Iowa rejected the debtor's limiting construction of the statute:

> ... In the law as it now appears we are convinced that there is no reason to read into (§ 561.21(3)) any other and different meaning than what it clearly expressed.

294 N.W. at 731.

However, the Court in *Moffitt* noted that there was no doubt that the judgment on the note was for the price of materials used in the improvement of the homestead. The controversy involved the original two parties—the borrower and the "would-be" mechanic's lienor. Rejecting the debtor's assertions that the creditor's failure to timely file a mechanic's lien deprived creditor of its right to recover through execution and levy, the Court made the following observations:

> ... We are not prepared to say that, with the law as it now stands, and as adopted by the legislature with the apparent intent to make the homestead liable for the improvements that were furnished for it, the defendants are not entitled to be reimbursed ... (The Iowa statute provides that) a specific lien may be acquired in one of three ways: "(a) he may, within the time fixed by law, file a lien statement under the mechanic's lien statute; (b) he may cause the land to be attached in an action to recover upon his claim; or (c) reduce his claim to judgment and docket it in the office of the clerk of the district court." (citing cases)
>
> The lien obtained by judgment and levy under general execution, under the provisions of (Chapter 561.21), *under the facts of this case, could be enforced against the homestead, ... although the right to foreclose under the mechanic's lien statute had been lost.*

294 N.W. at 733–734 (emphasis added).

The holding of *Moffitt* is limited to the facts therein. But for the failure of the materialman to file his claim promptly as the statute required, the creditor could have maintained an action of foreclosure upon a mechanic's lien. The Court held that, al-

though the right to foreclose a mechanic's lien on such property was lost under the statute of limitations, the "would-be" mechanic's lienor was not prevented from enforcing his rights to levy under Chapter 561.21 of the homestead law.

*Moffitt* is not authority for the proposition that money-lenders and their assignees are members of the class of creditors intended to be protected by the provisions of subparagraph (3) of Chapter 561.21. As discussed above, a strict reading of the statute and an examination of its legislative history does not support Defendant's position either. Further, the protective purposes of Chapter 561.21(3), in light of the Iowa Code provisions viewed as a whole, are not served by the broad construction that is urged by Defendant herein.

The separate and distinct treatment regarding the order of priorities and remedies traditionally accorded money-lenders from that accorded materialmen and laborers indicates that money-lenders were not intended to be included within the class of creditors protected by the § 561.21(3) language which closely follows that of the mechanic's lien statute. A lending institution may obtain and protect its priority against future mechanic's liens, for example, by perfecting its lien and recording the security interest prior to the commencement of work on the owner's property. If no work has commenced prior to the recording, foreclosure by the money-lender may leave little or nothing for mechanics' lien claimants. However, if work commenced prior to the recordation by the money-lender, all mechanics' liens have priority over the recorded security interest of the lender. Chapter 572.18, Code of Iowa, 1980.

There are various remedies available to money-lenders for the enforcement of valid indebtedness arising out of contractual agreements with the borrower. A money-lender may protect its interests by obtaining a mortgage or perfecting a security interest in property of the debtor, which may be foreclosed by special execution upon an event of default. However, the laborer, often lacking privity of contract with the property owner, is frequently not in a position to protect himself. The Iowa legislature has chosen to provide special protection to those mechanics, laborers and materialmen who labor, physically or mentally, to improve the property of others. See Chapter 572, Code of Iowa, 1980. Only those persons who, in the regular course of their businesses, are instrumental in producing a work of improvement on the homestead of another, via their direct contribution thereto, are entitled to protection under the mechanic's lien law.[6] Those institutions that loan or advance money to pay for labor or material for an improvement are not entitled to a mechanic's lien upon the improvement in Iowa, *Carr Hardware Co. v. Chicago Bonding & Surety Co.*, 190 Iowa 1320, 181 N.W. 680 (1921),[7] nor are such money-lenders entitled to protection under Chapter 561.21(3) of the homestead law.

Section 561.21 specifies certain circumstances whereby particular property of the debtor, the homestead, is by nonbankruptcy

---

6. In California, a state with mechanic's lien statutes similar to those in Iowa, one of the elements necessary for eligibility of a claim as a mechanic's lien is that the claimant must have made a direct contribution to the specific work of improvement. Anyone directly involved in the actual creation of a work or improvement stands under the umbrella of the mechanic's lien law. Indirect participants, persons remote from the scene of action, are denied eligibility. For example, a materialman to a materialman is not entitled to a mechanic's lien. Marsh, *California Mechanics' Lien Law Handbook*, 3d ed., 1979 at 28–30.

See: Calif. Const., Art. XX, § 15; Calif. Civil Code, Div. III, Pt. 4, Tit. XV, § 3310.

California courts have determined that money-lenders are members of a class of persons not included within the definition of claimants entitled to a mechanic's lien. *Sweet v. Fresno Hotel Co.*, 174 Cal. 789, 795, 164 P. 788, 791 (1917).

7. Case law shows that the courts are in general agreement that a proper statement of the law denies a mechanic's lien in favor of a third party lending money to a debtor to pay for labor or material. See, *United States v. Western Contracting Corporation*, 341 F.2d 383 (8th Cir. 1965); Annot., 74 A.L.R. 522 (1931) and the cases cited therein.

law available to specific creditors, but exempt as to the rest. Because the § 561.-21(3) exception for the benefit of any creditor whose claim is for work done or materials furnished for the improvement of the homestead is not applicable to Defendant's claim herein, the debt evidenced by the promissory note from Plaintiffs may not be satisfied by sale of Plaintiffs' homestead, nor may Defendant's judgment lien attach to said real estate and thereby impair an exemption to which Plaintiffs are entitled under Section 522(b) of the Bankruptcy Reform Act of 1978.

The debt due and owing to Defendant from Plaintiffs under said promissory note is included in the effect of Plaintiffs' discharge, and Plaintiffs' Complaint to Avoid the Fixing of a Lien under 11 U.S.C. § 522(f) is denied.